. [Tutwiler v. National Building & Loan Association.]

# Tutwiler *v.* National Building & Loan Association.

### Bill in Equity to have Mortgage Contract declared Usurious and to be allowed to Redeem.

1. *Usury; must exist at the time of the execution of a contract.* Unless a contract is usurious at its inception, it can not thereafter become tainted with usury; and the fact that a contract, which is not usurious when originally made, contains stipulations which, by reason of a subsequent contingency, may result in the promissor being required to pay a greater sum than the principal with legal interest, does not render such contract usurious.

2. *Same; equity of bill to have mortgage contract of building and loan association declared usurious and for redemption.*—In a bill filed by a borrower from a building and loan association seeking to have the mortgage contract declared usurious, and to be allowed to redeem from under the mortgage, where in the mortgage contract attached as an exhibit, it is stipulated that the debt secured was to be paid in monthly installments, to be applied to dues on stock held by the mortgagor, to premiums and to interest on the loan, and said contract, by its terms, does not purport to bind the mortgagor to pay more than the sum borrowed, with legal interest, but it is agreed that the mortgagor should pay all fines and assessments levied, pursuant to the by-laws of the association, and the by-laws or charter provisions of the association are not set out in the bill, and there are no extraneous facts averred in the bill as having existed at the time the contract was made, rendering it usurious, such bill is defective and subject to demurrer.

APPEAL from the Chancery Court of Hale.

Heard before the Hon. THOS. H. SMITH.

This was a bill in equity filed by Rosa S. Tutwiler against the National Building & Loan Association of Montgomery. The bill alleged that in 1891 the appellant applied to the appellee for a loan of fifteen hundred dollars; that it was represented to her that the loan

would be made by the appellee, and that the rate of interest thereon would not exceed eight per cent. per annum; that she was required to take out stock in said association, and that while said stock was pretendedly made the basis of said loan and pretendedly pledged for the payment of the same, and while it was pretendedly agreed that ten and 50-100 dollars of the money to be paid to the association by complainant each month should be paid on said stock, the real and true intent and purpose on the part of the association was to collect from the complainant by the requirement as to the stock a rate of interest greater than eight per cent. per annum, and that the real and truthful transaction between the parties was a loan of fifteen hundred dollars secured by a mortgage on the real estate set out in the bill.

The bill avers the execution and delivery of the mortgage to secure the loan and it is made an exhibit to the bill; that the interest required was usurious; that she had paid on said mortgage the sum of fifteen hundred dollars, and that she is indebted to the complainant in the sum of five hundred dollars, but that the appellee claims an indebtedness of $1,585.70, and that for the purpose of settling the matter without litigation, she offered the association the sum of one thousand dollars in full settlement, which was by it refused, and that, therefore, she does not make tender of the money. That the mortgage has been advertised for foreclosure. The bill prayed an accounting between the parties, an ascertainment of appellee's counsel fees, that she may be let in to redeem the said lands, and that the sale might be enjoined, submitting herself to the orders of the court.

The mortgage executed by the complainant and her husband to the National Building & Loan Association was attached as an exhibit to the bill. This mortgage was given upon certain property specifically described therein. It set out the note containing the contract entered into between the complainant and the defendant; which note, after acknowledging the receipt of the five hundred dollars as a loan on thirty shares of stock

owned by the complainant, then contained the following recitals: "I, Rosa S. Tutwiler, agree to pay to said association on the first Saturday of each month from this date, at the office of the association, Montgomery, Alabama, twenty-eight and 50-100 ($28.50) dollars, which shall be applied as follows: First, to the payment of monthly dues on said stock the sum of ten and 50-100 ($10.50) dollars; second, to the payment of premium for the precedence due on said loan, amounting to ten and 50-100 ($10.50) dollars per month; third, to the payment of the interest due on said loan, amounting to seven and 50-100 ($7.50) dollars per month. I further agree to pay all fines and assessments levied or made against me pursuant to the by-laws of said association, said payments shall be continued until the dues so credited on said stock, together with the dividends declared thereon shall equal the par value of said stock; should I fail for six months to pay said monthly payments then the whole amount of said loan shall, at the option of said association, at once become due and payable. It is hereby mutually agreed that this contract and the mortgage securing the same are made and shall be construed agreeably to the laws of the State of Alabama, and that this provision shall not be waived except by stipulation of the parties in writing over the signature of the secretary and the corporate seal of the association." This note or contract was signed by Rosa S. Tutwiler.

After setting out this contract, the mortgage then continued as follows: "Now if the parties of the first part, their heirs, executors or administrators shall well and truly pay or cause to be paid to the party of the second part, its successors or assigns, the sums aforesaid as provided in said contract, which is hereby referred to and made a part of this mortgage, and shall keep and perform all and singular the covenants herein contained on the part of the parties of the first part, to be kept and performed, then this deed shall be null and void; otherwise to remain in full force and effect." There was then provision for the sale of the property in the event of default, and also stipulations for the

payment of the taxes, taking out of insurance, and other provisions usual in mortgages executed to building and loan associations.

To this bill of complaint the defendant demurred upon twenty-six grounds, which may be summarized as follows: 1. Said bill of complaint is without equity and shows on its face that the complainant is not entitled to maintain this suit. 2. Said bill of complaint contains no averment therein showing that the respondent association has ever collected, or attempted to collect, from the complainant any money other than is authorized by the by-laws of said association. 3. Said bill of complaint contains no averment therein showing that the respondent association has ever collected, or attempted to collect from the complainant any money other than is authorized by the by-laws of said association, and the averments of said bill show that the complainant executed the note and mortgage, or bond and mortgage, to secure a loan or advance on the stock owned by complainant in said association, and in accordance with the provisions, rules and by-laws of said association. 5. The averments of said bill do not show that under the by-laws of the respondent association the payments made by the complainant constituted any partial satisfaction or discharge of the indebtedness secured by said mortgage. 6. The averments of said bill do not show that the payments made constitute legal payments or credits on the mortgage or on the loan or advance thereby secured. 7. The averments of the bill do not show that complainant is entitled to any credit for the value of the 20 shares of stock shown to be owned by her in said association. 8. The averments of said bill do not show that the respondent association has failed or refused to state the account between it and the complainants. 9. The averments of the bill do not show that the account between the complainant and the respondent association is so complicated or so involved as to require the interposition of a court of equity. 10. The averments of said bill do not set up the usury charge specifically and particularly, and do not give the terms of the agreement, and do not show the amount of usurious interest

charged. 11. The averments of said bill charging usury are vague, indefinite and insufficient. There was also a motion to dismiss the bill for the want of equity.

Upon the submission of the cause upon the motion to dismiss for the want of equity and upon the demurrers, the chancellor overruled the motion to dismiss, and rendered a decree sustaining the demurrers. From this decree the complainant appeals, and assigns the rendition thereof as error.

DeGRAFFENRIED & EVINS, for appellant.—The bill in this case was not subject to the demurrers interposed, and the decree sustaining such demurrers was erroneous. *Asso. v. Robinson,* 69 Ala. 419; *Mills v. Asso.* 75 N. C. 252; *Association v. Biering,* 86 Tex. 484; *Vann v. Association,* 75 N. C. 494; *Waverly v. Association,* 64 Md. 338; *Association v. Jaecksch,* 51 Md. 201, and authorities cited in *Asso. v. Robinson, supra.*

HOLLOWAY & HOLLOWAY, WM. L. MARTIN and THOS. E. KNIGHT, *contra,* cited *Sheldon v. Birmingham B. & L. Asso.,* 121 Ala. 278; *Montgomery B. & L. Asso. v. Robinson,* 69 Ala. 413; *Security B. & L. Asso. v. Lake,* 69 Ala. 456; *Lake v. Sec. etc. Asso.,* 72 Ala. 207; *Southern B. & L. Asso. v. Anniston L. & T. Co.* 101 Ala. 582; *Wingate v. Association,* 128 Ill. 67; *Freeman v. Asso.* 114 Ill. 182; *McLaughlin v. B. & L. Asso.* 62 Ind. 264.

SHARPE, J.—If a contract be not usurious at its inception it does not thereafter become so. To make it usurious it is not sufficient that a sum greater than the principal with legal interest may become demandable, but to have such effect it must appear that the borrower is bound to make return of the principal certainly, or subject to no probable hazard and that the interest will, or may, exceed the legal rate.—Tyler on Usury, 172; Webb on Usury, § 24; *Van Beil v. Fordney,* 79 Ala. 76.

By the mortgage contract which is here alleged to be usurious it is stipulated that the debt secured was to be paid in installments of $28.50 per month, to be applied $10.50 to dues on stock held by complainant in

the defendant association, $10.50 to premium, and $7.50 to interest on the loan, and it is also agreed that the complainant should pay all fines and assessments levied against her pursuant to by-laws of the association.

No definite time is fixed in the mortgage as its law day, or for the cessation of payments provided for, except by a stipulation that "said payments shall be continued until the dues so credited on said stock, together with the dividends declared thereon shall equal the par value of said stock." It was further provided that failure for six months to make the monthly payments should at the defendant's option make the whole amount of the loan due. Without the happening of the last named contingency, the time during which the payments were to continue, and consequently the number of such payments made necessary to discharge complainant's obligation, is determined alone by the event of the stock's maturity, to be wrought by the allowance of credits for payments on stock and for dividends declared.

Presumably if the dividends contemplated were to be derived from profits of a business conducted by the association and participated in by its stockholders, credits on the stock from that source must have depended largely upon the character and conduct of the business transacted. Under conditions of prosperity arising from wise management and favoring circumstances such dividends, together with the regular payments provided to be credited on stock dues, might have been sufficient in amount to mature the stock and extinguish the complainant's liability before the installments accruing against her could together amount to the sum borrowed. The bill does not set out by-laws or charter provisions of the association, nor does it otherwise disclose a plan adopted or pursued by the association for doing business or for earning and declaring dividends. It contains no ground for equitable relief unless for usury. The mortgage contract exhibited does not by its terms purport to bind the complainant to pay more than the sum borrowed, with legal interest. Lacking averment of extraneous facts, existing when

[Colley v. Spivey.]

the contract was made and rendering it usurious in effect, the bill was subject to the demurrers.

Decree affirmed.