7 So.2d 77

#### GOODGAME et al. v. DAWSON.

#### 5 Div. 351.

Supreme Court of Alabama.

Feb. 19, 1942.

Rehearing Denied March 26, 1942.

500

G. C. Walker, of Clanton, and Herbert W. Peterson and Smith, Jackson & Rives, all of Birmingham, for appellants.

Gerald & Gerald and Reynolds & Reynolds, all of Clanton, for appellee.

FOSTER, Justice.

This is a suit filed by a mortgagor against the holder of two mortgages, setting up usury in each of them separately, and alleging that they are either paid by virtue of the usury and payments which have been made, or if not paid that an account be stated, the amount due be ascertained and redemption allowed.

The mortgages are between the same parties and cover the same real estate, but each is to secure a different debt with no connection between them. The first is dated June 12, 1930 for $10,009.85. The court found and held that the consideration of this mortgage was $6,500 made up of two items, one of $3,500 due November 1, 1930, by mortgage for that sum dated November 25, 1929, and the second was an item of $3,000 advanced by Edwards, the mortgagee, to Goodgame, mortgagor, under a contract they made of June 12, 1930, the date of the mortgage, but that such latter transaction was affected with usury. Wherefore the court proceeded to state the account and credited all payments first on the principal of the usurious item of the consideration, then on the $3,500 with interest and other charges, leaving a balance due on that mortgage of $3,996.26.

When the mortgage was executed, it was for the full amount of $10,009.85, represented by one hundred and thirty notes, of which the first was due February 1, 1931, for $98.33, and each of the others was for thirty-three cents less than the amount of the last prior maturing note. On that basis, each note evidently included the principal sum of $50, and the balance of it is interest and reduced each month by the interest for a month on $50 at eight percent, which is thirty-three cents.

If the consideration of the mortgage was the principal sum of $6,500, each of the one hundred and thirty notes would have an excess charge of $5 over the amount of the legal rate and of course this would be usurious.

On the date of the execution of the mortgage, a written contract was entered into between the parties, which was prepared by E. R. Piper, a disinterested witness. It recited an existing debt of $3,500 secured by a mortgage due November 1, 1930, and an agreement by the mortgagee, Edwards, to advance to the mortgagor, Goodgame, the additional sum of $3,000 for the erection of improvements on said property, and an agreement by Goodgame to pay interest on the $3,500 from the maturity of the mortgage November 1, 1930, to January 1, 1931, and to pay interest on the additional advancements to be made for the improvements, also to said date January 1, 1931; and the contract also recited that the mortgage that day executed to secure said debt was to bear interest from January 1, 1931.

The witness Piper testified that he then and there prepared a series of one hundred and thirty notes which were executed, dated June 12, 1930, and the mortgage for $10,009.85, at the request of Edwards and on information given by him, who also requested him to figure interest on $50 for one month at eight percent., which is thirty-three cents. Each note is for a sum equal to that of the preceding month less thirty-three cents. This witness did not calculate the amount of each note, but testified that this was done by Edwards.

This evidence supports the finding of the court that the consideration of the mortgage was made up as stated in the contract of June 12, 1930, of $6,500, made payable in one hundred and thirty notes due monthly, the first one due February 1, 1931, of $98.33. As we have said this calculation shows a charge of $5 in each note, in excess of legal interest.

Goodgame testified in the case and later died, and Edwards had died before the suit was filed. Under his will, his widow took these mortgages and she assigned them to appellee also before this suit was brought. Appellants are the widow, heirs and representatives of W. H. Goodgame.

As against this finding by the court they contend that as to the $3,500 which entered into the consideration of the mortgage, it represented a transaction by which Edwards made a loan to Goodgame, and took a mortgage for that amount dated November 25, 1929, due November 1, 1930, but that Goodgame only received $3,400 and that Edwards charged a bonus of $100 for making the loan besides lawful interest. They also contend that Goodgame only received $2,500 advanced after June 12, 1930, and that Edwards charged a bonus of $500 for making the loan; and that the true consideration of the mortgage was therefore $5,900, and not $6,500.

The evidence offered by appellants to sustain that contention consists of a proposal to prove it by Goodgame, and by the testimony of others of certain state-

ments made and conversations between Goodgame and Edwards to that effect. The court sustained objection to that proposed testimony of Goodgame on the ground that he was disqualified under section 7721, Code of 1923, Title 7, section 433, Code of 1940. This ruling of the court was correct. The exclusion contained in the statute applies to those claiming in succession to the deceased, Edwards, acquired after his death, the same as to his estate. Federal Land Bank v. Curington, 233 Ala. 263, 171 So. 361; Williams v. Dent, 233 Ala. 109, 170 So. 202; Black v. Black, 233 Ala. 425, 172 So. 275; Key v. Jones, 52 Ala. 238; Boykin v. Smith, 65 Ala. 294; Barnes v. White, 195 Ala. 588, 71 So. 114; Jernigan v. Gibbs, 206 Ala. 93, 89 So. 196; Loring v. Grummon, 176 Ala. 240, 57 So. 819. It is said not to apply to the protection of those who though claiming title through the deceased, derive such claim from transactions inter vivos. Nelson v. Howison, 122 Ala. 573, 578, 25 So. 211.

On the other hand, appellee claims that Edwards advanced to Goodgame as much as $17.96 more than the $3,000 as agreed on June 12, 1930, and also had advanced sums aggregating $584 from December 9, 1929, to June 9, 1930, or a total of $601.96 above $3,000, and also that the $3,500 evidenced by the mortgage due November 1, 1930 was due to bear interest.

As to both contentions, it is sufficient to say that there was ample evidence to sustain this finding by the court as to the consideration of the mortgage of June 12, 1930. As we have said, he also found that there was usury in the $3,000 item of the consideration, but none in the $3,500 item. Upon the assumption that the consideration was $6,500, with interest paid to January 1, 1931, as stipulated in the contract would be due, and considering the $3,500 as though it were also a loan made under the mortgage, the entire amount of the consideration would be affected with usury, since each note is for $5 in excess of principal and legal interest.

But we will also accept the finding of the court that the item of $3,500 did not bear usurious interest prior to its inclusion in the transaction of June 12, 1930. So that the question of law which appellants' insistence presents, is whether or not that item as it entered into the computation making up the consideration for the mortgage must have like burden with the item of $3,000 new money, when illegal interest was computed on the whole as a single item, charged and inserted in the notes signed by Goodgame.

We do not seem to have cases directly in point, but have some of a kindred nature of more or less value here.

In Davis v. Elba Bank & Trust Co., 216 Ala. 632, 114 So. 211, it is said that when several separate and distinct debts, some usurious and some not, are combined in one mortgage, the entire indebtedness is not infected with usury (by that circumstance alone we may add), Compton v. Collins, 190 Ala. 499, 67 So. 395; Noble v. Moses, 74 Ala. 604. In those cases, there was no usurious agreement made as to the combined amount which formed the consideration of the new transaction, and it is said in the Davis case, supra, that the principle has no application to such a situation.

We also have a line of cases which hold that when the original transaction is not usurious, a subsequent agreement to pay illegal interest, in consideration of forbearance, will not impart to the original contract the taint of usury, so long as it remains in force without renewal, discharge or cancellation. Read v. Flaketown Graphite Co., 206 Ala. 611, 91 So. 258; Bernheimer v. Gray, 201 Ala. 462, 78 So. 840; Nance v. Gray, 143 Ala. 234, 38 So. 916, 5 Ann.Cas. 55; Van Beil v. Fordney, 79 Ala. 76, 77.

In all those cases, the principle is stated with the provision that the original contract which is free from the taint remains in force without renewal, discharge or cancellation, and that the creditor, for such usurious consideration, merely agrees to forbear from its enforcement, holding that such agreement so tainted is itself without consideration and void. Dismukes v. Weed's Ex'rs, 203 Ala. 64, 82 So. 24.

But those authorities are not directly in point when a debt free from usury is combined with a new loan, and their aggregate is taken as the consideration for a new mortgage, and treated in it as a new debt, and on that amount illegal interest is agreed upon.

■ While we have not found any cases directly in point, we think that the proper rule is that such a situation results in creating a usurious transaction in its entirety as of that date and as applicable to the whole of the consideration. Before that transaction became effective there was no part of the debt infected with the taint of usury. But when it occurred, a new

transaction was then perfected so that the consideration was not divisible in separate items, one of which was the old debt and another new money advanced, insofar as the question now is concerned. If the old debt had been tainted with usury, and with the usurious interest had been carried into the new transaction, the taint would persist, though the new transaction may not as such be otherwise so infected. Authorities, supra. But when the usurious interest is agreed on as to the new transaction in its entirety, the whole consideration is so affected, though none had previously existed.

The result is that in our opinion the mortgage debt secured by the mortgage of June 12, 1930, should be treated as indivisible for the purposes now in hand, and that it is infected with usury.

We agree that the consideration is the principal sum of $6,500, on which credits should be applied, without any charge of interest, and that the balance be ascertained on that basis.

### Mortgage of August 22, 1935.

The consideration of this mortgage had nothing to do with that of June 12, 1930, previously here considered by us. It was given to secure a sum represented by a series of one hundred and one notes aggregating $3,523.39, made up of one hundred notes of $35 each, and the last one of $23.39, all dated August 22, 1935, and one maturing each month beginning September 1, 1935, and each reciting that it is "with interest from maturity."

As to this transaction, complainants make several contentions. One is that Goodgame only received $2,300 from Edwards, and agreed to pay a bonus of $250 in addition to interest at eight per cent. On the trial complainants offered to prove by Goodgame those facts, but the court sustained the objection, again applying section 7721, Code of 1923. This ruling is assigned as error, but it was free from error for the reasons stated in this opinion in respect to such testimony offered as to the mortgage previously considered. But other competent witnesses testified to statements made by Edwards which corroborate the theory that the amount of the loan was $2,300.

There is also evidence tending to show that on June 22, 1935, the loan which was to be used in erecting a filling station was $2,000, and that a mortgage was prepared and signed on that date reciting a consideration of $2,967.47 in eighty-four notes, all for $35 except the last one, each dated June 22, 1935, and the first due September 1, 1935. There is also evidence of a "work sheet" prepared by Piper, showing a figure of $2,250 labeled "loan," with monthly figures set up showing the amount of interest and of principal each month, which made up the notes of $35 each, calculated on the basis of eight per cent. That mortgage contains a recital as follows: "This mortgage duplicated by larger one and is hereby cancelled." (Signed S. M. Edwards).

The mortgage here in question was thereafter executed August 22, 1935, reciting one hundred notes of $35, and one for $23.29 (the note was made for $23.39), and there is also a "work sheet" used to explain those figures, made by Piper. He testified that he knew nothing of the facts on which the figures were made and in fact does not remember making them. The figures on the work sheet correspond with the amounts of the one hundred and one notes described in the mortgage of August 22, 1935. That sheet shows a "loan" of $2,585 with monthly figures set up showing the amount of interest and of principal each month which made up the notes of $35 each, calculated on the basis of eight per cent., except the last was $23.39.

Complainants' contention is that the amount advanced was as by agreement, first $2,000, then it was found out that $300 was needed, and that amount was advanced, and no more, and that there was added $250 as a bonus in making the calculation for the notes and mortgage. It is not contended that if the amount advanced was $2,585 the calculation shows usury. The court found that there was no usury, which was in effect a finding that the amount advanced under this mortgage was $2,585. We observe that adding an alleged bonus of $250 to $2,300 makes $2,550 instead of $2,585.

A great many checks were introduced in evidence, and which show that amounts which are substantially equal to that sum were advanced under this mortgage. There was much evidence concerning those checks and some of them have been raised to amounts in excess of that which first appeared, and which was paid by the bank. No satisfactory explanation is made as to their alteration. Mr. Edwards is not here to do so. But considering the correct

amount of them in connection with others, the evidence justified the finding. The court had before him personally all this data and also the witnesses and so found. His finding should not be disturbed.

The court, we think, was in error in making the computation of amount unpaid on the mortgage dated June 12, 1930, and should make it on the basis that all credits should be applied to the principal sum of $6,500 without interest, and upon that basis determine the balance unpaid. And to that extent the decree is reversed with instructions to do so.

But we agree with the court as to the consideration and interest charge of the mortgage dated August 22, 1935, and as to it the decree is affirmed. But that is a second mortgage on the same property, and it should not be foreclosed until the true amount of the first one, dated June 12, 1930, is fixed in this cause, so that they may both be foreclosed at the same time. But complainants may pay into court the amount of the second mortgage as ascertained by said decree and now affirmed, with interest from the date of that decree, so as to stop the running of interest on it.

The costs of this appeal are taxed to appellee; and the costs of the trial court, which did not accrue on appeal, are taxed equally between appellants and appellee.

Affirmed in part, and reversed in part with instructions, and remanded.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.

### On Rehearing.

FOSTER, Justice.

Appellee insists that we have disregarded their claim that usury as to the mortgage of June 12, 1930, was not duly pleaded. But that claim has not been overlooked. The bill alleges in substance that the usury consisted in the fact that the consideration of the mortgage was $5,900, to which was added bonuses of $600, making the total consideration $6,500, on which interest at eight percent. was added and agreed on. Whereas the evidence shows that on June 12, 1930, the agreement was that the consideration of the mortgage was $6,500, of which $3,000 was to be advanced later, and it was advanced. But it was as of June 12th, that the exact nature of the agreement speaks. It is unmistakable from the evidence, that the agreement was that the consideration was $6,500. To that amount was added not only the interest on it at eight percent. but a total of $650, being $5 to each of the one hundred and thirty notes. This can only be considered in the nature of a bonus and was of course usurious.

So that the only difference between the allegations of the bill and the proof in this respect is that the bill alleges that the consideration of the mortgage was $5,900, with a bonus added of $600, and the proof shows a consideration of $6,500 with a bonus of $650 added. We do not think the exactitude of correspondence between the pleadings and proof extends to the point of requiring a reversal of the decree, an amendment to correspond to the letter of the proof and then further consideration of it on that issue so fully covered by the evidence already taken.

There is no uncertainty of averment as in Bernheimer v. Gray, 201 Ala. 462, 78 So. 840. Compare Williams v. Noland, 205 Ala. 63, 87 So. 818.

The only question is one of variance, and that is chiefly in the statement of the principal amount of the consideration of the mortgage. It has never been supposed that this is fatal to relief in respect to questions other than the claim of usury. The amount of the bonus added as shown by the proof is $50 more than that alleged. But it was payable $5 a month for one hundred and thirty months without interest. The averments of the bill apprised the court and parties that the claim of usury consisted of a bonus of $600 added to the principal advanced. The proof varied only in exactitude of averment which did not prejudice the rights of the parties. The decree should not be reversed on that account.

The application for rehearing made by appellee is overruled.

The application filed by appellants was on a ground not argued or suggested until after our judgment was rendered. It cannot be now considered. Their contention however is not well taken, had it been duly presented. See the cases of Guin v. New England Mortgage Security Co., 92 Ala. 135, 8 So. 388; Stickney v. Moore, 108 Ala. 590, 19 So. 76.

The application for rehearing made by appellants is also overruled.

Applications for rehearing overruled.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.